UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD WHITE, | : | CIVIL ACTION NO. 3:CV-04-2804 |
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| JAMES L. GRACE, Superintendent, | : | |
| Respondent | : | |

## ORDER

Ronald White, ("White"), an inmate confined at the State Correctional Institution, Huntingdon, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Although granted parole by the Pennsylvania Board of Probation and Parole ("the Board"), White challenges the fact that due to his failure to have an approved home plan in advance of his release from the Community Corrections Center, he has yet to be paroled. For the reasons that follow, the petition for writ of habeas corpus will be denied.

## **Background**

White's criminal background, which dates back to the 1970's, includes, inter alia, convictions for robbery, aggravated assault, burglary, involuntary deviate sexual

intercourse, possession of an instrument of a crime and terroristic threats. He is currently serving a six to twenty year sentence, after pleading guilty to three 1996 robberies in Philadelphia County. (Doc. 11, Exhibit A, Declaration of Sharon Dunlap, Parole Agent at SCI-Huntingdon). White's maximum release date is January 21, 2016. Id.

On December 17, 2003, the Board issued a decision granting White parole to a Community Corrections Center[1] ("CC") and directing that he participate in the Community Corrections' Center programs until successfully discharged by the Parole Supervision Staff. (Doc. 11, Ex. 1, Att. B). The grant of parole also included a number

---

[1]Community Corrections Centers are operated by the Department of Corrections and provide a controlled community-based setting outside the prison to continue an inmates programming while providing a transitional reintegration period. (Doc. No. 11, Ex. A). The Department of Corrections divides the State into three regions: Region I which includes the greater Philadelphia area and vicinity; Region II which includes areas from Allentown north to the New York Border and west through the Harrisburg are and beyond; and Region III which is the far Western portion of the State including Pittsburgh and Erie. When an inmate is released to a CCC, he is to be assigned to a CCC in the Region in which he was convicted. Id. White's Philadelphia County conviction will require him to be released to a CCC in Region I. However, because of the high number of inmates paroled and limited bed space in the CCC's, there often is a waiting period for an inmate actually to move into a CCC once granted parole. Id. After an inmate is paroled to a CCC, an application must be forwarded to the appropriate Region to find a spot for that inmate in a CCC which has space and programming consistent with the inmate's needs and the parole plan. Id.

2

of conditions on his parole, including that White must have an approved home plan [2] and an evaluation to determine his need for sex offender treatment. Id.

In April, 2004, White was told that he needed to have an approved home plan prior to being released to a CCC. (Doc. 11, Ex. A). A plan subsequently submitted by White was disapproved because the apartment he was going to reside in was inhabitable. Id. After this disapproval, Petitioner's parole agent continued to offer assistance in submitting an acceptable plan. White's most recent submission of a home plan is currently under consideration. However, even if the home plan is approved, White's release is still contingent on available bed space. Id.

---

[2] A home plan is a plan submitted by an inmate which indicates where they are going to reside once they are released into society and where they will be employed. (Doc. 11, Ex. A). Once an inmate submits a home plan for consideration, an investigation is conducted to ensure that the information is correct and that is does not violate any possible parole restrictions (eg., some sex offenders may not be allowed to reside or work near schools or playgrounds). Id. By requiring an inmate to have an approved plan prior to the release to a CCC, the inmate must demonstrate that he is ready to progress through the CCC program and have an acceptable plan already in place. Id. It also ensures that the inmate will not spend an extended period of time in the CCC waiting to develop an approved plan, as inmates are not released from a CCC without an approved home plan in place. This helps to expedite the inmate through the CCC program and also allows more efficient turnaround time for bed space in the CCC. Id.

3

**Discussion**

Generally, before a district court can consider the merits of a §2254 petition, petitioner must show that he "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A petitioner presenting only unexhausted claims generally may not be granted relief by a federal court.  See Picard v. Connor, 404 U.S. 270, 275 (1971); Williams v. Vaughn, 3 F. Supp.2d 567, 571 (E.D. Pa. 1998).  This exhaustion requirement is imposed upon state prisoners in order to preserve comity by affording the state courts the first opportunity to correct constitutional errors.  Coleman v. Thompson, 501 U.S. 722 (1991); Gibson v. Scheidemantel, 805 F. 2d 135, 138 (3d Cir. 1986)(stating that exhaustion "serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights.").

However, the exhaustion requirement is not jurisdictional and nonexhaustion is not "an inflexible bar to consideration of the merits of [a] petition. . . ."  Granberry v. Greer,481 U.S. 129, 131 (1987).  The Supreme Court in Granberry favored an "intermediate approach" whereby the appellate courts may "exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith."  Id.  "The court

4

should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim. If, for example, the case presents an issue on which an unresolved question of fact or of state law might have an important bearing, both comity and judicial efficiency make it appropriate for the court to insist on complete exhaustion to make sure it may ultimately review the issue on a fully informed basis. On the other hand, if is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will be well served . . . [if] the district court denies the habeas petition. . . ." Id. at 134-135.

Similarly, our Court of Appeals has stated that the district courts reviewing habeas petitions may dismiss plainly meritless unexhausted claims. Evans v. Court of Common Pleas, 959 F.2d 1227, 1230 (3d Cir. 1992). Moreover, the Antiterrorism and Effective Death Penalty Act of 1996 codified this premise at 28 U.S.C. §2254(b)(2) which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

Although respondents advance the argument that White has not exhausted his state court remedies with respect to the instant petition, his petition is clearly without merit. As such, this petition will be addressed on the merits.

It is axiomatic that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Moreover, it is well-settled that parole is not a protected liberty interest in Pennsylvania. "[I]n Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his or her maximum term [of imprisonment]." Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766, 770 (Pa.Commw.Ct.1997). See also Burkett v. Love, 89 F.3d 135,139 (3d Cir.1996); Tubbs v. Pennsylvania Board of Probation and Parole, 152 Pa.Cmwlth. 627, 620 A.2d 584, 586 (Pa.Commw.Ct.1993); Reider v. Pennsylvania Board of Probation and Parole, 100 Pa.Cmwlth. 333, 514 A.2d 967, 971 (Pa.Commw.Ct.1986). "Under Pennsylvania law, the sentence imposed for a criminal offense is the maximum term; the minimum term merely sets the date prior to which a prisoner may not be paroled." Brown v. Pennsylvania Board of Probation and Parole, 668 A.2d 218, 220 (Pa.Commw.Ct.1995) (citation omitted). "Prisoners have no

absolute right to parole, but rather only the right to petition for parole upon the expiration of the minimum term." Id.  Thus, the Petitioner's claim that he has yet to be paroled to a CCC cannot constitute a procedural due process violation, since he did not have a protected liberty interest in parole. See supra; Greenholtz, 442 U.S. at 7-10. Moreover, the Petitioner has not alleged any type of action by the Pennsylvania Board of Probation and Parole which might give rise to a substantive due process violation, such as a denial of his parole to a CCC on the basis of race, political belief, religion or other impermissible criteria. See Perry v. Sindermann, 408 U.S. 593, 597 (1972); Burkett, 89 F.3d at 139-40 (citing Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980)). White simply cannot be placed in a CCC because, at present, he has not submitted an acceptable home plan.  Once an acceptable home plan is approved, and provided space is available in an appropriate CCC, White will qualify for transfer to that location to continue to serve his sentence until successful completion of the program. The petition for writ of habeas corpus will be denied.

**AND NOW, THIS 5th DAY OF JULY, 2005, IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DENIED.**

2. The Clerk of Court is directed to **CLOSE** this case**.**

7

      3.      There is no basis for the issuance of a certificate of appealability.

                                                           s/ William J. Nealon  
                                                           **United States District Judge**